**UNITED STATES of America,**
**Appellee,**

v.

**BISHOP PROCESSING COMPANY, a body corporate of the State of Maryland, Appellant.**

**No. 14148.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1970.

Decided March 3, 1970.

Certiorari Denied May 18, 1970.
See 90 S.Ct. 1695.

John Paul Curran, Upper Darby, Pa., and Ralph J. Savarese, Strafford, Pa. (Lord, Ackerman & Mulligan, Upper Darby, Pa., on brief), for appellant.

Walter Kiechel, Jr., Deputy Asst. Atty. Gen. (Shiro Kashiwa, Asst. Atty. Gen., and Robert S. Lynch, Atty., Dept. of Justice, and Stephen H. Sachs, U. S. Atty., and J. Frederick Motz, Asst. U. S. Atty., on brief), for appellee.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge:

This appeal is the most recent chapter in a long series of proceedings, in and out of court, stretching over more than a decade. The states of Delaware and Maryland, later joined by the federal government, have been endeavoring to bring relief to affected communities from alleged air pollution stemming from the appellant's rendering plant.

From approximately 1959 to 1965 the two states engaged in futile efforts to induce Bishop Processing Company, operator of the rendering and animal reduction plant located near Bishop, Maryland, to abate the malodorous air pollution which allegedly moves across the state line to pollute the air of nearby Selbyville, Delaware. Finally in 1965, the United States Secretary of Health, Education and Welfare received a request from the Delaware authorities to "take the necessary action under P.L. 88–206, section 5 (the Clean Air Act, 42 U.S.C. § 1857 et seq.), to secure the abatement of the air pollution problem."[1]

---

1. The letter was as follows:

The State of Delaware has been working with the State of Maryland over the past six (6) years in an attempt to correct an interstate air pollution problem which endangers the health or welfare of the people in the Selbyville, Delaware, area. No substantial progress has been made in spite of efforts on the part of the Maryland State Department of Health and the Delaware State Board of Health to resolve the problem. The offender is the Bishop Processing Company located in Bishop, Maryland. An obnoxious and nauseating odor emanates from the

In response to this request the Secretary initiated hearing procedures provided in the Act.

As recited in the District Judge's opinion,[2] the initial step was a conference held in Selbyville on November 9 and 10, 1965. The parties attending the conference represented, as specified in the Act, the air pollution control agencies of the states and municipalities concerned. The Secretary forwarded to the participants a summary of the conference discussions and recommendations, which called upon Maryland to require Bishop to take certain remedial action by September 1, 1966.

Since the recommended remedial action was not taken, the Secretary instituted the next step envisioned in the Act, by calling a public hearing which was held on May 17 and 18, 1967. At this hearing Bishop was represented by counsel who extensively cross-examined witnesses and otherwise fully participated. The hearing board forwarded its findings and recommendations to the Secretary, who in turn transmitted them

to Bishop with the instruction to abate the pollution not later than December 1, 1967 by installing adequate and effective pollution control systems.[3]

This step also proving fruitless, the Secretary, in the exercise of the authority granted him in section 1857d,[4] filed a complaint on March 7, 1968 in the United States District Court for Maryland seeking to enjoin Bishop from discharging malodorous air pollutants. There followed discussions between the parties and on October 4, 1968 the appellant proposed settlement of the case, specifying the terms he would accept. On November 1, 1968, the action then pending was disposed of by settlement. A consent decree was entered in which Bishop agreed, in the precise terms it had suggested, to "cease all manufacturing and processing" upon the "filing of an affidavit by the Director, Air Pollution Control Division, State of Delaware Water and Air Resources Commission, stating that the defendant is discharging malodorous air pollution reaching the State of Delaware * * *."[5]

plant of this Company in the process of rendering feathers, offal, bone and grease. The citizens of Selbyville, Delaware, describe this odor as a "horrible stench."

The State Board of Health, Air Pollution Authority of Delaware, with the concurrence of the Governor, respectfully requests the Secretary of the Department of Health, Education and Welfare take the necessary action under P.L. 88–206, section 5, to secure abatement of this air pollution problem. Your prompt attention in relation to this matter will be deeply appreciated.

2. United States v. Bishop Processing Co., 287 F.Supp. 624 (D.C.Md.1968).

3. *"Notice*
There are attached hereto, and made a part hereof, the Findings, Conclusions, and Recommendations, dated May 19, 1967, of the Hearing Board convened pursuant to the provisions of section 105 (e) (1) of the Clean Air Act [42 U.S.C. 1857d(e) (1)] which held a public hearing in the matter of the interstate air pollution in the Selbyville, Delaware-Bishop, Maryland area.
"In accordance with section 105(e) (3) of the Clean Air Act [42 U.S.C. 1857d

(e) (3)] the Bishop Processing Company, Bishop, Maryland is hereby notified and directed to cease and desist from discharging malodorous air pollutants and to abate such air pollution not later than December 1, 1967, by the installation, completion and placing into operation adequate and effective control systems and devices, as recommended by the Hearing Board."

4. See specifically, 42 U.S.C. § 1857d(g) (1) and § 1857d(h).

5. This cause having come on for pretrial conference, and the defendant having consented to the following order, it is hereby ordered, decreed and adjudged that:
1. The defendant, Bishop Processing Company, and its officers, agents, servants, employees, successors and assigns, and any and all persons in active consort or participation with them are permanently enjoined and restrained from discharging malodorous air pollutants into the State of Delaware.
2. The Court retains jurisdiction of this suit for the purpose of enforcing this decree in the following manner:
a) Upon the plaintiff's filing of an affidavit by the Director, Air Pollution Control Division, State of Delaware

The Director accordingly instituted a surveillance program to determine to what extent, if any, the obnoxious odors persisted and reached Delaware. Odor logs were kept at the instance of the Director and he made personal observations. On this basis the Director found that Bishop had been recurringly discharging malodorous air pollutants which reached the State of Delaware since November 1, 1968. These findings and conclusions the Director embodied in an affidavit.

Based upon this affidavit and pursuant to the consent decree, the United States moved for an order directing the defendant to cease operations. A hearing on this motion was held on March 3 and 4, 1968, in which the District Judge declared that the "Court would prefer to have more evidence" that Bishop is engaging in air pollution, and announced his interpretation of the consent decree "for the guidance of * * * members of the staff who may be participating in any further investigations." In this way the judge indicated to the parties the type of evidence he would consider requisite for a showing of air pollution upon which an order could be based.

On September 12, 1969, the United States filed a second motion accompanied by affidavits in compliance with the consent decree and the court prescribed evidentiary requirements. After a further hearing, the court found the evidence substantial and entered the order to cease operations. The appeal is from this order.

■ The appellant presses the contention that the District Court erred in ruling that the Director performed his duties in accordance with the consent decree. Bishop argues that the decree was entered into with various "understandings" which contemplated certain procedures to be followed by the Director in his investigation. Specifically, Bishop asserts its "understandings" that (1) the Director was not to rely on citizen complaints or on testimony of representatives of the federal government in determining whether it committed air pollution and, (2) that the Director's finding was to be based upon "generally accepted sampling techniques."

Whatever merit this argument might have in other circumstances, it must fail here. The consent decree is plain in its terms. Nowhere and at no time was it intimated that any finding of air pollution was to be based upon unexpressed "understandings" with respect to the investigative procedures. Neither before the entry of the consent decree, nor when the judge held a hearing and announced his interpretation of the decree for the guidance of the parties did Bishop disclose the existence of any "understandings" or reservations on its part.

Bishop had ample opportunity to propose incorporation in the decree of any protection it may have felt necessary, and to object to procedures it deemed contrary to its understanding of the decree's terms. It cannot now ask the court to revise the decree by inserting language or to interpret it to embrace matters which, if present at all, were lurking in the recesses of Bishop's corporate mind.

■ Apparently as an afterthought, appellant now complains that the government witnesses lacked objectivity. It is contended that information supplied by employees of the United States

Water and Air Resources Commission, stating that the defendant is discharging malodorous air pollution reaching the State of Delaware, the Court will forthwith order the defendant to cease all manufacturing and processing operations in defendant's rendering and animal reduction plant located near Bishop, Maryland.

b) The defendant shall have no recourse or appeal from the determination of the Director, Air Pollution Control Division, State of Delaware Water and Air Resources Commission, tendered to the Court in the matter described in subparagraph a) above.

should not have been considered, for the federal government is an adversary in this proceeding. It was argued to us that appellant had faith in the Delaware Director but not in the federal officials and that appellant's expectation was that the Delaware official would not rely upon federal representations made to him. There are many examples of administrative agencies that act upon the testimony of their investigators. It does not derogate from the investigators' objectivity that the agency by whom they are employed has the regulatory function. Of course the fact finder must consider every witness' relationship to the parties and to the subject matter, but a government employee is not disqualified as a witness by reason of his employment.[6]

But the issue is a false one here, for the Director, whom the appellant chose to determine the facts, did not exceed the terms of his authority in the consent decree. Like considerations apply to appellant's belated challenge to citizens' complaints.

■ Bishop's further contentions, variously repeated, are in substance an attack on the sufficiency of the evidence upon which the finding of air pollution was based. As above stated, at the first hearing the District Judge explained, with no caveat whatever from Bishop, the type and quantum of evidence he felt was necessary. After a second hearing he found that the Government had complied with his directions and adduced sufficient evidence to show that Bishop continues to pollute the air. Certainly the factual finding, so carefully arrived at, cannot be deemed clearly erroneous.

Pollution is a severe and increasing problem of which the courts and other branches of government have become acutely conscious. The residents of the area in the neighborhood of Bishop's plant have the right to demand that the air they breathe shall not be defiled by what witnesses described as a "horrible" and "nauseating" stench. The afflicted neighbors have striven long and in vain to vindicate that right. Relief is due them now.

The appellant cannot complain that the decree came suddenly, unexpectedly, or without awareness of the complaints, nor that it was denied full opportunity to meet them. In light of the entire history we perceive no inequity.

This court is not unmindful of the serious consequences to appellant's business from the District Court's order. It is, however, precisely the remedy which Bishop suggested and agreed to in order to avoid a trial, and seems inescapable since it has over a long period failed to take effective measures to solve the problem.

The order of the District Court is affirmed.

It is further ordered that if appellant applies to the Supreme Court for certiorari within 15 days from the filing of this opinion, the injunctive order of the District Court will be further stayed until final disposition of the case in the Supreme Court; otherwise the District Court's injunction shall become operative.

Affirmed.

---

6. In dealing with questions concerning the procedures to be followed by administrative agencies, it has been consistently held that rigid rules of evidence observed in courts of law may be relaxed in administrative proceedings. Federal Trade Commission v. Cement Institute, 333 U.S. 683, 705–706, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). Opp Cotton Mills v. Administrator, 312 U.S. 126, 657, 61 S.Ct. 524, 85 L.Ed. 624 (1941) ; Rosedale Coal Co. v. Director of United States Bureau of Mines, 247 F.2d 299 (4th Cir. 1957).