467 F.2d 349
 4 ERC 1567, 2 Envtl. L. Rep. 20,683
 GETTY OIL COMPANY (EASTERN OPERATIONS), Inc., a Delaware
corporation, Appellant,
v.
William D. RUCKELSHAUS, as Administrator of the
Environmental Protection Agency, and the
Environmental Protection Agency, Appellees.
 No. 72-1419.
 United States Court of Appeals,
Third Circuit.
 Argued June 23, 1972.
Decided Sept. 12, 1972.
Certiorari Denied Jan. 15, 1973.
See 93 S.Ct. 937.
 
 Charles F. Richards, Jr., Richards, Layton & Finger, Wilmington, Del., for appellant.
 F. L. Peter Stone, U. S. Atty., Wilmington, Del., for appellees.
 Before HASTIE, JAMES ROSEN and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 JAMES ROSEN, Circuit Judge.
 
 
 1
 This appeal is taken from an order of the district court 342 F.Supp. 1006, denying applications for preliminary and permanent injunctions and a temporary restraining order staying the effect of a compliance order issued by the Administrator of the Environmental Protection Agency (EPA). The Administrator issued the order pursuant to Section 113 of the Clean Air Act as amended by the Air Quality Act of 1967 and the Clean Air Act amendments of 1970, 42 U.S.C. Sec. 1857 et seq.
 
 
 2
 Getty operates an oil refinery in Delaware City, New Castle County, Delaware. One of the by-products of its refinery operation is fluid petroleum coke. Delmarva Power and Light Company (Delmarva) operates a power station for Getty. The power station was designed to burn fluid coke along with either fuel gas or oil. Delmarva burns the fluid coke produced by Getty under a long term contract with Getty and thereby supplies the electricity and steam requirements of the refinery.
 
 
 3
 On October 13, 1970, after a public hearing on proposed air pollution regulations for Delaware was held,[1] the State Water and Air Resources Commission adopted Regulation IX[2] limiting the amount of sulphur content of fuel burned in New Castle County south of United States Route 40 by fuel burning equipment having a maximum rate of heat input equal to or greater than 500,000,000 b.t.u. per hour to 3.5%. The Delmarva power station is the only installation presently operating such equipment in the area.[3]
 
 
 4
 On August 4, 1971, Regulation IX was approved along with other sections of Delaware's implementation plan by the Administrator of EPA. As the court below noted in its opinion of May 10, 1972, "[w]hile this approval received substantial publicity at the time and presumably came to Getty's attention shortly after the action was taken, notice of the approval was not published in the Federal Register until February 3, 1972."
 
 
 5
 Since approval by the EPA of Delaware's implementation plan no petitions for review of the Administrator's action have been filed pursuant to section 307(b)(1) of the Clean Air Act, 42 U.S.C. Sec. 1857h-5,[4] by Delmarva or Getty.
 
 
 6
 On September 28, 1971 Getty submitted a request to the Secretary of Natural Resources and Environmental Control of the State of Delaware for a "variance" from the January 1, 1972 effective date of the regulation. 7 Del.C. Sec. 6007. The basis for the application was simply that, since the national primary standards for sulphur dioxide were already being met in New Castle County, there was no compelling reason why Getty should not be given additional time to meet the emission standards of Delaware's implementation plan.[5] On December 28, 1971, the Secretary denied Getty's application.[6] Getty then took an appeal to the Water and Air Resources Commission (WARC).[7]
 
 
 7
 On December 29, 1971, Getty instituted an action in the Delaware Chancery Court seeking a temporary restraining order against enforcement of the challenged regulation by the state Secretary pending disposition of Getty's appeal to the Delaware Water and Air Resources Commission. The restraining order was granted on December 30, 1971.[8]
 
 
 8
 On February 14, 1972, Region III of the EPA sent a certified letter to Delmarva pursuant to section 114(a) of the Clean Air Act requesting information dealing with the sulphur content of fuel burned by Delmarva during January, 1972. Delmarva submitted the requested data on February 18, 1972, and later updated the information contained in the February 18 letter by submitting data for February and March 1972. For each month the data submitted indicated a violation of Regulation VIII in that the total content of the sulphur by weight exceeded 3.5%. The Administrator notified Delmarva of the violations by registered letter dated March 6, 1972. On March 20, 1972 a conference was held with representatives of the EPA and Delmarva. 42 U.S.C. Sec. 1857c-8(a)(4). Getty requested and was given permission to attend the conference. As a result of the data supplied by Delmarva, the EPA concluded that a violation of the subject regulation had occurred "in that Delmarva was burning, at its Delaware City, Delaware power station, fuel with a sulphur content in excess of 3.5% by weight."[9] The EPA also found that the violation had continued beyond the 30th day after the date of the Administrator's March 6, 1972 letter. On April 17, 1972 the order seeking compliance with Regulation VIII was issued, 42 U.S.C. Sec. 1857c-8(a)(1), fixing May 1, 1972 as the deadline for compliance.[10]
 
 
 9
 Getty filed this suit on April 21, 1972 and a hearing on its application for a temporary restraining order was held on April 27, 1972. The Administrator voluntarily agreed to suspend the effectiveness of the compliance date until May 10, 1972.
 
 
 10
 The district judge expressed his conception of Getty's application in this fashion:
 
 
 11
 "While Getty expressly disavows any claim that the regulation is invalid as a 'generally applicable regulation', Getty does allege that it is arbitrary and unreasonable in its application to plaintiff and that its enforcement as to plaintiff would be in violation of the requirements of the Fourteenth Amendment to the Constitution of the United States. (Emphasis in text) * * * As I understand it, however, the arbitrariness and unreasonableness of the regulations result from the alleged facts (1) that the national primary standards for sulphur dioxide have already been achieved in New Castle County and the regulation is accordingly wholly unnecessary to achieve and maintain that standard, and (2) that compliance with the regulation at least prior to development of an alternative technology would impose an unreasonable hardship on Delmarva and Getty. In connection with this latter point Getty asserts that it has applied for a variance on the basis of this hardship and that enforcement of the regulation prior to a determination of its appeal from the Secretary's denial of a variance would deprive it of procedural due process."
 
 
 12
 The compliance order is alleged to be arbitrary, capricious and unwarranted by the facts. Its enforcement prior to a due process hearing would, Getty claims, amount to a taking of property without due process of law. Getty also alleges invalidity of the order due to non-compliance with the requirements of the National Environmental Policy Act, 42 U.S.C. Sec. 4321 et seq.
 
 
 13
 The Administrator's position is that, inasmuch as Getty is attacking the regulation as being unnecessary and therefore unreasonable and unconstitutional, pre-enforcement judicial review of the compliance order is foreclosed by section 307(b), 42 U.S.C. Sec. 1857h-5. Getty disagrees with the Government's statement of appellant's position, emphasizing its neutrality regarding the regulation on which the compliance order is based:
 
 
 14
 "Getty accepts the Regulation, but only asks for more time to comply with it."[11]
 
 
 15
 Getty argues that the regulation is unnecessary because the national primary standard has already been achieved in New Castle County, and that the economic burdens imposed by the regulation when compared to environmental benefits render the regulation wholly arbitrary and unreasonable. The district court recognized that such attacks upon the Administrator's approval of a regulation can only be asserted in a section 307 proceeding. However, the court concluded that the Clean Air Act as a whole did not foreclose pre-enforcement review because Getty was raising issues which would not be raised in a section 307 proceeding.[12] We find that no such issues were presented to the district court. Getty was posing a direct challenge to the regulation. No dispute exists regarding the underlying facts supporting the Administrator's compliance order. Absent such a factual dispute, there only remains the determination whether Getty's constitutional right to a due process hearing prior to the imposition of criminal sanctions for noncompliance was satisfied.
 
 
 16
 It was unnecessary for the district judge to determine whether the Clean Air Act as a whole precludes preenforcement judicial review by necessary implication. Getty was in the wrong court by virtue of section 307 of the Act. The Declaratory Judgment Act and APA could not afford a basis for jurisdiction.12A Getty's arguments against enforcement require a determination by the court whether the regulation is unnecessary, unreasonable or capricious. Whether Getty abides in the regulation "in its general application" is immaterial. If Congress specifically designates a forum for judicial review of administrative action, such a forum is exclusive, and this result does not depend on the use of the word "exclusive" in the statute providing for a forum for judicial review. UMC Industries, Inc. v. Seaborg, 439 F.2d 953 (9th Cir. 1971). The Declaratory Judgment Act and the APA do not extend jurisdiction of either the district courts or the appellate courts to cases not otherwise within their competence. See Zimmerman v. United States Government, 422 F.2d 326 (3d Cir. 1970) cert. den. 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565, reh. den. 400 U.S. 855, 91 S.Ct. 26, 27 L.Ed.2d 93 (1970); Mattingly v. Elias, 325 F.Supp. 1374 (E.D.Pa.1971).
 
 
 17
 Mindful as we are of the principle enunciated in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), that courts should restrict access to judicial review only upon a showing of "clear and convincing evidence" of a contrary legislative intent, we are equally impressed by Justice Frankfurter's admonition that "[s]tatutes * * * are instruments of government, and in construing them 'the general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down.' * * * This is so because the purpose of an enactment is embedded in its words even though it is not always pedantically expressed in words." United States v. Shirey, 359 U.S. 255, at 260-261, 79 S.Ct. 746, 749, 3 L.Ed.2d 789 (1958).
 
 
 18
 The Constitution requires an opportunity at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case. "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." Boddie v. Connecticut, 401 U.S. 371, at 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); see also Ewing v. Mytinger and Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).
 
 
 19
 A review of the tangled procedural history preceding Getty's institution of this suit convinces us that due process has been satisfied. First, Getty appeared at Delaware's hearing on the proposed implementation plan for attainment of air quality standards and argued against adoption of Regulation VIII. After approval by WARC, Getty had an opportunity to appeal the adoption of the regulation to the state Superior Court. It chose instead to seek a variance with the Secretary of Natural Resources and Environmental Control. The Secretary denied the application and Getty took an appeal to WARC. That appeal is still pending. The Administrator's adoption of Delaware's plan, and specifically Regulation VIII, received wide publicity in the media, and presumably came to Getty's attention in the fall of 1971. No appeal was taken from the Administrator's approval of the implementation plan to the Court of Appeals, as provided by the Clean Air Act. Instead, Getty chose to seek a restraining order in the Chancery Court of Delaware in December of 1971. Recently, that court denied a motion by the Delaware Secretary of Natural Resources and Environmental Control to vacate or modify the restraining order. Getty also took the opportunity to participate in the conference between EPA and Delmarva regarding possible violations of the regulations. In light of the above, Getty's protestations that the doctrines of ripeness and justiciability would have foreclosed it from obtaining meaningful review are frivolous. Furthermore, we reject Getty's attempt to establish the limited criteria for obtaining a variance contained in the Clean Air Act as a substitute for section 307 judicial review. Getty maintains that "[t]he adoption of the Regulation by the Commission involved the applicability of all the Regulations to the state as a whole and involved very different questions than are presented by the rather narrow question of a variance application which is made on the grounds of hardship to a Regulation which may be otherwise suitable for the entire state." However, the fact remains that the regulation in question quite possibly affects a single installation, i. e. Delmarva, in the designated area south of U.S. Route 40, since Delmarva is the only plant operating fuel burning equipment having a maximum rate of heat input equal to or greater than 500,000,00 b. t. u. per hour. Getty could have raised the questions of economic hardship or lack of compelling necessity in a section 307 hearing that it sought to raise below. Its failure to do so cannot be attributed to any lack of sufficient notice or hearing.
 
 
 20
 The close case alluded to by the district court presents no problem, keeping in mind that in an enforcement proceeding, the burden of establishing a violation of the applicable regulation would be carried by the Government.[13] The admissions made by Delmarva, however, and the affidavit of intent submitted by its chief executive officer, make any allusion to the hypothetical "close case" unnecessary. We note further that, under 42 U.S.C. Sec. 1857h-5(c), the review provisions of the Act provide for a much broader and more meaningful judicial review than either the district court or appellant recognized:
 
 
 21
 "(5)(c) In any judicial proceeding in which review is sought of a determination under this chapter required to be made on the record after notice and opportunity for hearing, if any party applies to the court for leave to adduce additional evidence, and shows to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Administrator, the court may order such additional evidence (and evidence in rebuttal thereof) to be taken before the Administrator, in such manner and upon such terms and conditions as to the court may deem proper. The Administrator may modify his findings as to the facts, or make new findings, by reason of the additional evidence so taken and he shall file such modified or new findings, and his recommendation, if any, for the modification or setting aside of his original determination, with the return of such additional evidence."[14]
 
 
 22
 Getty has sought to litigate the merits of its variance application on this appeal. It requested a postponement of argument before WARC pending a judicial determination by either the Chancery Court or the Court of Appeals. We decline to substitute our judgment for that of WARC. There is no constitutional or statutory authority which would allow us to make such a determination. The Clean Air Act authorizes approval of a revision[15] of an implementation plan by the Administrator, after adoption by the state based upon reasonable notice and public hearings. 42 U.S.C. Sec. 1857c-5(a)(3). Getty attempts an end run around the Act by seeking pre-enforcement judicial review before WARC has had an opportunity to pass upon Getty's application for a variance, and before the Administrator has had an opportunity to review any forthcoming state action. And here lies the crux of Getty's predicament: having failed to appeal the Administrator's approval of the Delaware plan, and faced as it is with the EPA's compliance order, Getty is presented with the choice of either compliance or breach, until such time as its application for a variance is favorably considered.
 
 
 23
 The district court noted that when the issue concerns timing of judicial review rather than the existence of said review, the procedures which must be afforded to an individual further depends upon the governmental interest in summary enforcement. There can be no question that the primary and secondary air quality standards serve substantial governmental interests-in the case of primary standards, protection of the public health; in the case of secondary standards-protection of the public welfare from any known or anticipated adverse effects associated with the presence of a specified air pollutant in the ambient air. 42 U.S.C. Sec. 1857c-3.
 
 
 24
 The Administrator has a responsibility to see that a state plan will meet the national standards. Because of that responsibility, he has a vital interest in determining whether a particular deferral will have the effect of preventing attainment or maintenance of the national standard. However, until the criteria of 40 CFR Sec. 51.32(a) through (f) are met, the Administrator is duty bound to enforce an approved implementation plan.
 
 
 25
 Getty's protestations of good faith attempts to find suitable technology which would enable it to comply do not affect the Administrator's duty of enforcement. Likewise, the conditions established for postponement of compliance in 42 U.S.C. Sec. 1857c-5(f)(1) are not available to Getty in any event.
 
 
 26
 Appellant's efforts to establish the lack of necessity for early compliance due to the existence of primary air quality in Delaware must fail. Section 110 of the Clean Air Act requires that state air implementation plans attain primary standards. It does not preclude such standards from being exceeded. Further, section 110(a)(2) (A)(i) provides that standards be achieved as expeditiously as practicable, but in no case later than 3 years from the date of approval of such plan. Getty's application for a variance envisions developing technology suitable for compliance to be available by 1976. The Clean Air Act allows, as an alternative to compliance with a secondary criterion, the use of emission control devices which would have the effect of achieving the same level of permissible emissions that observance of criteria such as fuel composition would achieve. The Act says nothing about deferring compliance merely because such technology is not available. Getty would have this Court make such a determination without any adequate record before it, and in the absence of findings by the Administrator pursuant to 42 U.S.C. Sec. 1857c-5(f)(1), under which a postponement can be granted.[16] Such a determination would be wholly improper, premature, and a clear usurpation of the Administrator's responsibility.
 
 
 27
 Appellant's remaining argument is that EPA's failure to file an environmental impact statement pursuant to section 102(2)(C) of the National Environmental Policy Act, 42 U.S.C. Sec. 4332(2)(C), renders the Administrator's compliance order ultra vires. Even if we were to agree with Getty's premise that EPA is subject to the NEPA requirement,[17] such an issue is properly raised in a section 307 proceeding. To require an impact statement at the enforcement stage would do substantial harm to the Congressional purpose of obtaining expeditious compliance with primary and secondary air standards. Failure to utilize the section 307 proceeding forecloses review in a civil or criminal proceeding for enforcement. 42 U.S.C. Sec. 1857h-5(b)(2). Furthermore, both EPA regulations and the guidelines drafted by the Council on Environmental Quality exempt regulatory activities from the impact statement requirements.[18]
 
 
 28
 Finally, the Administrator is given the responsibility of making policy reviews under 42 U.S.C. Sec. 1857h-7, annual comprehensive economic cost studies under 42 U.S.C. Sec. 1857j-1, and periodic reports to Congress under section 1857j-2. It is apparent that the Clean Air Act itself contains sufficient provisions for the achievement of those goals sought to be attained by NEPA.
 
 
 29
 We conclude that Getty's belated effort to attack Regulation VIII in the guise of pre-enforcement review of the compliance order is precluded by section 307 of the Clean Air Act. This appeal is a paradigm of confession and avoidance.
 
 
 30
 The case will be remanded to the district court with directions to enter an order of dismissal for lack of jurisdiction.
 
 
 
 [1]
 Getty appeared at the hearing and argued against the adoption of a proposed regulation which would have the effect of limiting the sulphur content in fuel burned at Delmarva's power plant to 3.5% after January 1, 1972
 
 
 [2]
 The regulation was subsequently renumbered XV. Its present designation is VIII
 
 
 [3]
 No appeal was taken to the Delaware State courts from the Commission's action. See 7 Del.C. Sec. 6012
 
 
 [4]
 Sec. 1857a-5. ADMINISTRATIVE PROCEEDINGS AND JUDICIAL REVIEW
 (a)(1) * * *
 (b)(1) A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard under section 1857c-7 of this title, any standard of performance under section 1857c-6 of this title, any standard under section 1857f-1 of this title (other than a standard required to be prescribed under section 1857f-1(b)(1) of this title), any determination under section 1857f-1(b)(5) of this title, any control or prohibition under section 1857f-6c of this title, or any standard under section 1857f-9 of this title may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 1857c-5 of this title or section 1857c-6(d) of this title may be filed only in the United States Court of Appeals for the appropriate circuit. Any such petition shall be filed within 30 days from the date of such promulgation or approval, or after such date if such petition is based solely on grounds arising after such 30th day.
 (2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement.
 
 
 [5]
 While Delmarva joined in Getty's application for a variance, an affidavit was filed by its chief executive officer in the district court indicating Delmarva's intent to comply with the Administrator's order "unless relieved of compliance by an order of this Court pursuant to the application of Getty Eastern," choosing not to "run the risk of incurring criminal fines and jail sentences which might be imposed if it did not comply."
 
 
 [6]
 The Secretary determined that if the variance were granted compliance with the national sulphur dioxide primary standard would be achieved no earlier than late 1975 or early 1976 and that the granting of the variance was precluded by the Clean Air Act and federal regulations promulgated thereunder
 
 
 [7]
 In a letter to the Commission dated March 13, 1972, Getty requested that argument on its appeal should be deferred pending a determination by the state or federal courts. No further action has been taken by the Commission at this date
 
 
 [8]
 On February 3, 1972, the Secretary removed from the Court of Chancery to the U. S. District Court for the District of Delaware the pending question of whether Getty's temporary restraining order should or should not be continued as a permanent injunction. On February 29, 1972, the district court remanded the question to the Court of Chancery. On February 7, 1972, the Secretary commenced an action for a declaratory judgment and an injunction against Getty and Delmarva. On April 7, 1972, the district court dismissed the prayer for an injunction and remanded the case to the Court of Chancery. On March 8, 1972, the Secretary made a motion in that court to vacate or modify the temporary restraining order. The Court of Chancery denied the motion on April 21, 1972
 
 
 [9]
 Order of William D. Ruckelshaus, Administrator of the EPA, April 17, 1972
 
 
 [10]
 WHEREAS, after review of the conference record and a thorough investigation of all relevant facts, including the seriousness of the violation and any good faith efforts to comply, it has been determined that immediate compliance with said Regulation VIII is reasonable; it is hereby
 ORDERED
 
 
 [1]
 That on and after May 1, 1972, Delmarva Power & Light Company comply with said Regulation VIII by burning no fuel (or fuel mixture), on any day or portion of a day, which fuel has a sulphur content which exceeds 3.5% by weight
 
 
 [2]
 That on or before May 1, 1972, Delmarva Power & Light Company certify in writing to the Regional Administrator of Region III of the Environmental Protection Agency the steps it will take or has taken to comply with paragraph 1 of this Order
 
 
 [3]
 That commencing June 1, 1972, and continuing thereafter until further Order of the Environmental Protection Agency, Delmarva Power & Light Company, on or before the 10th day of each month, certify, in writing, to the Regional Administrator of Region III of the Environmental Protection Agency, the average sulphur content of the fuel by weight burned on each day during the preceding calendar month
 
 
 [11]
 Appellant's opening brief, p. 12
 
 
 [12]
 Although we agree with the trial judge's observation that it would be too speculative to draw an inference from the Clean Air Act that Congress had in mind only two types of judicial proceedings, section 307 proceedings and enforcement actions, we find his concern with the hypothetical "close case", where an honest difference of opinion exists whether an air quality regulation has been violated, to be unwarranted by the facts of this case
 12A The district judge predicated jurisdiction to entertain the "issues presented" under 28 U.S.C. Sec. 1337, the Declaratory Judgment Act, 28 U.S.C. Sec. 2201, and the Administrative Procedure Act (APA), 5 U.S.C. Sec. 701 et seq.
 
 
 [13]
 See United States v. Bishop Processing Company, 423 F.2d 469 (4th Cir. 1970), cert. den. 398 U.S. 904, 90 S.Ct. 1695, 26 L.Ed.2d 63 (1970)
 
 
 [14]
 While this section supports a holding that pre-enforcement judicial review is available at least to the extent that a determination is made "under this chapter" on the record after notice and opportunity for a hearing, the record before us does not present a challenge to the Administrator's findings that Regulation VIII was violated. See 42 U.S.C. Sec. 1857c-8(a). Rather, the allegations presented in the district court and on appeal constitute a direct challenge to the necessity, reasonableness and constitutionality of Regulation VIII. Regulation VIII received approval of the Administrator as part of Delaware's implementation plan. Section 1857h-5(b)(1) provides that review of an Administrator's approval be sought in the court of appeals in the appropriate circuit. There is no dispute in the record that the findings of the Administrator respecting his determination of violations by Delmarva had occurred. Having failed to seek review of the Administrator's approval in a section 307 proceeding, it is foreclosed from doing so by the clear language of 42 U.S.C. Sec. 1857h-5(b)(1). It would likewise be foreclosed from raising these objections in a civil and criminal proceeding for enforcement. 42 U.S.C. Sec. 1857h-5(b)(2)
 
 
 [15]
 Under the EPA regulations, a state's decision to defer the applicability of any portion of the control strategy with respect to a source "will be deemed a revision" of the applicable implementation plan. 40 CFR Sec. 51.32(f)
 
 
 [16]
 In addition to good faith efforts at compliance and the absence of necessary or alternative technology, this section requires the existence of alternative operating procedures and interim control measures to reduce the impact of the source on the public health, and also that the continued operation of the source be essential to national security or the public health and welfare. Application for postponement under this section must be made by the Governor of the state
 
 
 [17]
 The cases cited to us by appellant are not persuasive that the EPA is bound by NEPA. See Kalur v. Resor, 335 F.Supp. 1 (D.D.C.1971); Environmental Defense Fund v. Hardin, 325 F.Supp. 1401 (D.D.C.1971)
 
 
 [18]
 See EPA Regulation Sec. 6.7, 37 F.R. 879; 36 F.R. 77.24-5