**WEST PENN POWER COMPANY**

v.

**Russell TRAIN, Administrator of the Environmental Protection Agency of the United States of America, et al.**

**Civ. A. No. 73–1083.**

United States District Court,
W. D. Pennsylvania.

June 19, 1974.

Harold R. Schmidt, Pittsburgh, Pa., for plaintiff.

Craig R. McKay, Pittsburgh, Pa., Marvin A. Fein, Harrisburg, Pa., for defendants.

## OPINION

KNOX, District Judge.

West Penn Power Company, a Pennsylvania public utility, has filed suit in this district court asking for an injunction against defendant Train, Administrator of the Environmental Protection Agency of the United States (hereinafter referred to as the Federal Administrator), and Maurice K. Goddard, individually and as Secretary of the Department of Environmental Resources, and the Department of Environmental Resources of the Commonwealth of Pennsylvania (hereinafter collectively referred to as the State defendants). The suit seeks an injunction against enforcement of a notice of violation issued by the Federal Administrator requiring plaintiff to install a sulphur emission control device on Boiler No. 33 at its Mitchell Power Station, a "fossil-fired" electric generating facility in Washington County, Pennsylvania and also seeks a declaratory judgment that it is not in violation of the Pennsylvania Plan for control and abatement of air pollution as approved by the Federal Administrator. Particularly, it is complained that the defendants are acting without authority of law in rejecting plaintiff's Plan for compliance with national standards controlling sulphur oxides by the use of a tall stack instead of sulphur emission control devices on the boiler.

Plaintiff avers that there are presently no sulphur emission control devices available for use on this boiler to enable it to comply with the regulations and that if it is required to install such devices, its generating capacity will be greatly reduced and its supply of electric power to its customers will be impaired. It is further averred that to install such devices will result in an expenditure in excess of $23,000,000 and annual costs of $6,500,000 which will require considerable increases in rates to its customers.

The federal legislation is lengthy and complicated with respect to air pollution. The air pollution control provisions are embodied in 42 U.S.C. § 1857 et seq., with numerous amendments. This legislation provides a comprehensive scheme for the control of air pollution throughout the United States. In 1857c–5 Section 110 provision is made for filing of state implementation plans to conform with national air quality standards as promulgated by the Federal Administrator. A plan is to be adopted by each state and submitted to the Administrator within a limited period of time for approval. Provision is made for action

by the Administrator in promulgating a plan where the state does not act.

The complaint is not clear as to exactly when the Pennsylvania plan for implementation of the national ambient air quality standards for Pennsylvania was approved by the federal agency, but it does appear that such approval was prior to September 15, 1972, because in paragraph 9 of the complaint, it is averred that the plaintiff on that date petitioned for a variance from the limitations contained in the Pennsylvania plan which petition for variance was amended June 7, 1973.

The amended complaint (which, inter alia, added defendant Goddard as a defendant in addition to the original defendant the Department of Environmental Resources of the Commonwealth of Pennsylvania) avers that on September 13, 1973, the Federal Regional Administrator notified the plaintiff that its power station was in violation of the Pennsylvania Plan. On September 19, 1973, it is averred that the state defendants rejected a variance for use of a tall stack on the boiler in question but postponed compliance until June 30, 1976, when they directed plaintiff to install a sulphur emission control device on the boiler in question which order of the state defendants plaintiff avers has been appealed "to the appropriate administrative body".

The plaintiff avers that the Federal Administrator has exceeded his authority in interpreting the federal Act to prohibit the use of a tall stack as a method for attainment of air quality standards and as a result of this interpretation by the Federal Administrator, the state defendants have failed to promulgate regulations permitting the use of a tall stack as a part of the Pennsylvania plan. It is therefore claimed that the federal defendant has breached his non-discretionary duties under Sections 108 and 110 of the Act (42 U.S.C. §§ 1857c–3 and 1857c–5).

The Pennsylvania legislation under which the state defendants are proceeding is found in 35 Purdon's Pa.Stats. 4001 et seq. It provides as pointed out by the plaintiffs for fines up to $1,000 per day, conviction after further proceedings for a misdemeanor, and civil penalties of $10,000 plus $2,500 for each day. This would appear enough to constitute irreparable harm for a preliminary injunction if the plaintiff was in the proper judicial forum.

## A. Suits Against The Federal Defendants.

Insofar as the federal defendants are concerned, plaintiff asks relief for a decree declaring that neither defendant has a right to reject plaintiff's plan for compliance, that the decree be entered declaring that plaintiff is not in violation of the Pennsylvania plan as approved by the Administrator and for a preliminary injunction enjoining the Federal Administrator from proceeding to enforce the notice of violation issued on September 13, 1973.[1]

---

1. "2. Pursuant to its authority under the Pennsylvania Public Utility Law, 66 P.S. 1101 et seq, Plaintiff operates the Mitchell Power Station, a fossil-fired electric generating facility in Washington County, Pennsylvania.

3. Defendant, Russell Train, is the Administrator of the Environmental Protection Agency of the United States of America ("Administrator" herein) charged with the responsibility under the Clean Air Act, 42 U.S.C. 1857 et seq. of approving or disapproving plans of the States for the implementation of national ambient air quality standards and, in cooperation with the States, of the enforcement of plans approved by the Administrator for the implementation of national ambient air quality standards.

4. Defendant, Department of Environmental Resources of the Commonwealth of Pennsylvania ("Department" herein) is an administrative agency of the Commonwealth of Pennsylvania authorized by the Pennsylvania Air Pollution Control Act, 35 P.S. 400D [4001] et seq. to prepare and develop a comprehensive plan for the control and abatement of air pollution in the Commonwealth of Pennsylvania.

\* \* \* \* \*

6. This Court's jurisdiction is based upon the Clean Air Act, 42 U.S.C. § 1857 et seq., specifically 42 U.S.C. 1857h–2; the Admin-

Jurisdiction to bring this suit against the Federal Administrator is allegedly founded upon 5 U.S.C. § 701 et seq. (Administrative Procedure Act), the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202, together with the jurisdictional grant contained in 28 U.S.C. § 1337) and also upon portions of the Clean Air Act, specifically 42 U.S.C. § 1857h–2.

▪ Insofar as the Administrative Procedure Act and Declaratory Judgment Act are concerned, our Circuit has spoken very clearly in Getty Oil Co. v. Ruckelshaus, 467 F.2d 349 (3d Cir. 1972) stating (page 356), "The Declaratory Judgment Act and APA could not afford a basis for jurisdiction."

Referring to 42 U.S.C. § 1857h–2 (Section 304 of the Act) it appears that plaintiff's claim for jurisdiction is based upon this language.

"*Citizen suits—Establishment of right to bring suit*

(a) Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—

.     .     .     .     .     .

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be."

1857h–2(b) provides as follows:

"No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, .   .   ."

▪ It appears from the complaint and the admissions of the parties that no such notice was given prior to the institution of this suit. We agree with the defendant that the Congress can specify in legislation terms upon which the government consents to be sued and such terms must be strictly followed. Hence, the court has no jurisdiction of this suit under that Section. Entirely aside from the notice provisions, we hold that this court has no jurisdiction under this Section for the reason that this covers only cases where the Administrator is being sued for failure to perform a non-discretionary duty. Here the plaintiff is attacking the Administrator's action in approving the Pennsylvania plan, and including therein a provision which prevents plaintiff from using the so-called tall stack as a method of compliance with the ambient air standards. A reference to 42 U.S.C. § 1857c–5 (Section 110) shows that the Administrator has ample discretion in determining approval of state plans, and hence it is the holding of this court that no suit will lie under 1857h–2.

istrative Procedure Act, 5 U.S.C. 701 et seq; The Federal Declaratory Judgment Act, 28 U.S.C. 2201 and 2202 and 28 U.S.C. 1337.

7. The Clean Air Act, 42 U.S.C. § 1587 [1857] et seq. is an Act of Congress regulating commerce.

8. On information and belief plaintiff avers that the Administrator of the Environmental Protection Agency has approved the plan submitted to it by defendant Depart-

ment for the implementation of national ambient air quality standards in the Commonwealth of Pennsylvania. The plan approved by the defendant Administrator included the rules and regulations of the defendant Department with respect to the attainment of national primary ambient air quality standards for particulate matter and sulfur oxides as well as rules and regulations with respect to variances from emission standards for particulate matter and sulfur oxides."

The real obstacle in plaintiff's path, however, is 42 U.S.C. § 1857h–5(b) (Section 307) wherein it is provided:

"(1) A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard under section 1857c—7 of this title, any standard of performance under section 1857c—6 of this title, any standard under section 1857f—1 of this title (other than a standard required to be prescribed under section 1857f—1(b)(1) of this title), any determination under section 1857f—1(b)(5) of this title, any control or prohibition under section 1857f—6c of this title, or any standard under section 1857f—9 of this title may be filed only in the United States Court of Appeals for the District of Columbia. A *petition for review of the Administrator's action in approving or promulgating any implementation plan under section 1857c—5 of this title or section 1857c—6(d) of this title may be filed only in the United States Court of Appeals for the appropriate circuit. Any such petition shall be filed within 30 days from the date of such promulgation or approval, or after such date if such petition is based solely on grounds arising after such 30th day.*

(2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement."

Admittedly the plaintiff chose not to file an appeal with the Court of Appeals for the Third Circuit, which appears to be the appropriate court, within 30 days and comes in now at this late date (suit was filed December 20, 1973) well over a year later in an attempt to secure injunctions and declaratory judgments in this district court against the actions of the Administrator.

Again, our Circuit in Getty Oil, supra, has spoken very clearly on this matter:

" . . . Getty was in the wrong court by virtue of section 307 of the Act. *The Declaratory Judgment Act and APA could not afford a basis for jurisdiction.* Getty's arguments against enforcement require a determination by the court whether the regulation is unnecessary, unreasonable or capricious. Whether Getty abides in the regulation 'in its general application' is immaterial. *If Congress specifically designates a forum for judicial review of administrative action, such a forum is exclusive, and this result does not depend on the use of the word 'exclusive' in the statute providing for a forum for judicial review.* UMC Industries, Inc. v. Seaborg, 439 F.2d 953 (9th Cir. 1971). The Declaratory Judgment Act and the APA do not extend jurisdiction of either the district courts or the appellate courts to cases not otherwise within their competence."

The court further said:

"No appeal was taken from the Administrator's approval of the implementation plan to the Court of Appeals as provided by the Clean Air Act. Instead, Getty chose to seek a restraining order in the Chancery Court of Delaware in December of 1971."

Getty thereafter brought a suit in the United States District Court for the District of Delaware and the Court of Appeals held that the plaintiff company was attempting an end run around the act by seeking pre-enforcement judicial review. The court held that there was no jurisdiction in the district court and remanded the case with directions to the district court to enter an order of dismissal for lack of jurisdiction. The court further said:

"The Administrator has a responsibility to see that a state plan will meet the national standards. Because of that responsibility, he has a vital

interest in determining whether a particular deferral will have the effect of preventing attainment or maintenance of the national standard. However, until the criteria of 40 CFR § 51.-32(a) through (f) are met, the Administrator is duty bound to enforce an approved implementation plan.

"Getty's protestations of good faith attempts to bind suitable technology which would enable it to comply do not affect the Administrator's duty of enforcement. Likewise, the conditions established for postponement of compliance with 42 U.S.C. § 1857c-5(f)(1) are not available to Getty in any event."

We agree that the granting of the variance by the state authorities extending time for compliance to June 30, 1976, amounts to a modification of the Pennsylvania plan, and in such case to stay the hand of the federal government there must be an application by the governor of Pennsylvania under 42 U.S.C. §§ 1857c-5 and 1857c-6.

We have further enlightenment on the problems before us in the case of Duquesne Light Co. v. Environmental Protection Agency, 481 F.2d 1 (3d Cir. 1973). In that case, involving clarification of a previously entered remand order by the circuit on petition for review timely filed, the court said:

"Review by federal courts of actions taken by the Administrator is circumscribed by section 307(b)(1). It provides that petitions for review of the Administrator's actions approving implementation plans are to be filed in the United States Court of Appeals for the appropriate Circuit, within thirty days of the date of the Administrator's approval. Subsection (2) of 307(b) forecloses later litigation in enforcement proceedings of issues for which review could have been had under section 307(b)(1)."

The court further pointed up the so-called "Getty Oil dilemma" which also exists in the instant case, namely that even though a variance has been obtained from state authorities, the Federal Administrator is nevertheless bound to enforce the original plan at least until proper application is made by the governor as hereinbefore mentioned. The court said:

"A. *The Getty Oil Dilemma*

At oral argument, the EPA asserted that redress through the state administrative process was the proper course for Duquesne and St. Joe to pursue. The companies applied for variances permitting deviation from the plan's requirements. Petitions seeking variances have, according to counsel, been filed with the appropriate state authority and are wending their way through the state administrative process. Presumably, the final state administrative determination will be subject to judicial review, pursuant to the Pennsylvania Administrative Agency Law, 71 PS 1710.41. Such recourse to the state procedure for correction of alleged imperfections in the Pennsylvania Implementation Plan is the path advocated by the EPA, but an undoubtedly time-consuming course of action. However, it does appear to serve the bi-level design of section 110 of the Clean Air Act."

The court further said:

"Thus Getty found itself in a difficult position. It was liable to federal sanctions, imposed because Getty was violating a state regulation adopted by the Federal Government, but in effect, repudiated by the state. The present case presents the Court with the specter of a recurrence of the Getty paradox. Here the plan has been adopted by, and is enforceable by, the EPA during the time state proceedings that might alter the plan are underway. A proper decision of this case requires a resolution of this predicament. However, such resolution will be considered in the concluding section of this opinion."

The court concluded as follows:

"The Court finds that to expose the companies to the risk of punishment without affording them full occasion to express their objections to the state implementation plan is fundamentally unfair. Therefore, this Court instructs the EPA that it must either (a) refrain from imposing any penalties on these companies during the pendency of their state administrative and judicial actions, so long as such actions are pursued by the companies in good faith and with due diligence, or (b) afford the companies a limited legislative hearing."

As noted, it appears the plaintiff finds itself in the "Getty Oil Dilemma". But if so this is to a considerable extent its own doing in not filing a petition for review with the circuit at the proper time. The circuit having a case properly before it could very well direct the administrator to refrain from enforcement procedures while the variance application was still pending before the state authorities but this court certainly would have no power to enter such a direction to the administrator when we determine as we do that we have no jurisdiction of this case at all. For this reason, the motions to dismiss filed by the Federal Administrator must be granted.

### B. *The State Defendants.*

Turning to the state defendants, we likewise find that we are without jurisdiction in this matter. The state defendants have raised numerous questions with respect to the jurisdiction of this court over the Department of Environmental Resources of the Commonwealth of Pennsylvania and likewise over Maurice K. Goddard who was sued individually and as secretary of this department to eliminate the argument that the suit was actually against the State of Pennsylvania and hence in violation of the Eleventh Amendment. The suit as stated was originally brought only against the State Department, and the state defendants very properly raised the question that the suit could not stand under the Eleventh Amendment. This was so held by the United States Supreme Court in Employees of the Department of Public Health and Welfare State of Missouri v. Department of Public Health and Welfare of Missouri, 411 U.S., 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). It will be noted, however, that *Employees* involved payment of money out of the public treasury of the State of Missouri. The instant case involves no such payment. Instead this suit for declaratory and injunctive relief only would appear to be properly brought against Goddard as an individual and as Secretary under the exposition of principles contained in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (United States Supreme Court Slip Opinion 72–1410, March 25, 1974), in which case it was held that a suit such as this would lie under the decision in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) even though there might be some effect upon the state revenues since the state officials were enjoined from enforcing monetary penalties against the offending party.

■ However this may be, we hold that we have no jurisdiction to order relief against the state officials by compelling them to promulgate variances as sought by the plaintiff herein and in refraining from enforcing the Pennsylvania plan which it is asserted was approved without proper authority by the Federal Administrator. Such determinations can only be made on a petition for review by our court of appeals and since such review was not sought at the appropriate time, the only other remedy is to secure a complete variance and resulting modification of the plan through state proceedings and application by the governor under 42 U.S.C. §§ 1857c–5 and 1857c–6 as heretofore discussed.

It does appear that a variance was sought from the state authorities and the plaintiff states its position as follows:

"On September 19, 1973, the Department granted plaintiff a variance

from its sulfur emission standards until June 30, 1976, rejecting however plaintiff's proposal for the use of a tall stack on Boiler No. 33 and directing it to install a sulfur emission control device. The action in the Department was appealed to the environmental hearing board—

"Despite the Department's grant of a variance until June 30, 1976, the Governor of Pennsylvania to date has not made application under Section 110f–1 of the Clean Air Act, 42 U.S.C. 1857c–5(f) for a one-year extension of the mid-1975 compliance dates of the Pennsylvania Implementation Plan. Nor to plaintiff's knowledge has any revision of that plan been submitted for approval of the Administrator under section 110a–3 of the Clean Air Act, 42 U.S.C. 1857c–5(a)(3)."

Again, we are dealing with discretionary powers of state officials. Any state policy relying upon dispersion techniques rather than the emission limitations has been held to violate the Congressional policy with respect to clean air. See Natural Resources Defense Counsel, Inc., v. Environmental Protection Agency, 489 F.2d 390 (5th Cir. 1974) in which case it was pointed out (page 401):

"Section 1857c—5(f) is the device Congress chose to assure this. Congress aimed to make 'variances', 'postponements', or whatever departures from earlier commitments might be called, unusual and difficult to obtain. That is why Congress required applications for them to be made by the governors of the states, thus ensuring an initial screening of applications by high-level state officials. And that is why Congress imposed rigorous substantive conditions on the granting of variances, allowing them only when the unavailability of technology made compliance impossible, when continued operation of the source was essential to national security, public health, or public welfare, and when all available alternative control measures had been taken."

The administrative authorities both state and federal should take into consideration these matters in connection with the current national energy crisis which may indicate wider use of certain types of coal fuels resulting in larger sulfur oxide emissions than heretofore considered proper with, of course, all possible devices to prevent further deterioration of the environment. That, however, is not a matter for this court but for the administrative agencies charged with enforcement of these statutes and also for Congress to consider.

It would obviously be futile for this court to restrain the state authorities from enforcing these statutes in compliance with a plan which Pennsylvania has submitted and had approved by the federal authorities, and this court certainly has no means of requiring the Governor of Pennsylvania to submit an application for amendment of the plan as heretofore approved since, as pointed out by the Fifth Circuit, it was intended that such variations be difficult and be entirely reposed in the governor's discretion as to whether action was proper under circumstances existing.

It appears that plaintiff's complaint is not that state agencies have not granted them a postponement. Rather, they complain that the state agency should have granted them a complete variance and permitted a tall stack to be erected in lieu of emission control devices which would amount to a wholesale amendment of the Pennsylvania plan.

If the plaintiff has any complaints about stays of proceedings or has any other remedies against the Pennsylvania authorities, it appears that it has ample means of securing extensions and so forth if the same are proper under 35 P.S. § 4004 (subsection 4.1) wherein it is provided:

"An appeal to the hearing board of the department's order shall not act as a supersedeas: Provided, however, That upon application and for cause shown, The Hearing Board of the Commonwealth Court may issue such

supersedeas. Any person aggrieved by an adjudication of the hearing board may appeal to the Commonwealth Court."

This court has no disposition to interfere with the administrative procedures under Pennsylvania law which appear to be comprehensive and capable of handling any complaints, constitutional or otherwise, which may be made by the plaintiffs. Particularly is this so when it appears we have no jurisdiction as heretofore determined over the Federal Administrator, and any such orders against the state authorities would be exercises in futility.

For the above reasons, we determine that this court has no jurisdiction of this suit and an appropriate order will be entered.