CONOCO INC.; Shell Oil Company; Texaco Inc.; and Union Oil Company of California, Plaintiffs,

v.

Sandra S. GARDEBRING, Director Enforcement Division Region V, United States Environmental Protection Agency; John McGuire, Regional Administrator Region V, United States Environmental Protection Agency; Douglas M. Costle, Administrator, United States Environmental Protection Agency; United States Environmental Protection Agency, Defendants.

No. 79 C 3110.

United States District Court, N. D. Illinois, E. D.

Sept. 24, 1980.

Squire, Sanders & Dempsey, Cleveland, Ohio, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for plaintiffs.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

Plaintiffs, four petroleum companies with gasoline loading terminals in Illinois, brought this action seeking review of the United States Environmental Protection Agency Administrator's (Administrator) determination, pursuant to Section 113 of the Clean Air Act, 42 U.S.C. § 7413, that they were violating federally enforceable Illinois air pollution rules. Defendants are the Environmental Protection Agency (U. S. EPA), the EPA Administrator, the EPA Administrator of Region V and the EPA Director of Enforcement of Region V. Jurisdiction is claimed under the Constitution and numerous statutes: 1) the fifth amendment; 2) 28 U.S.C. §§ 1331, 1337; 3) the Administrative Procedure Act, 5 U.S.C. §§ 551–559 and §§ 701–706; 4) the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and 5) the Clean Air Act, 42 U.S.C. §§ 7401–7642.

Plaintiffs request nullification of the Administrator's findings, a declaratory judgment that their loading terminals are in compliance with Rule 205(b)(1) of the Illinois State Implementation Plan (SIP), and injunctive relief prohibiting the imposition of civil or criminal penalties. Defendants have counterclaimed for compliance and civil penalties. Currently before the Court is defendants' motion to dismiss the complaint for lack of subject matter jurisdiction. However, defendants request the Court to retain jurisdiction over the counterclaim and to realign the parties according to their real interest. For reasons stated below, the motion is denied.

The facts are undisputed. Pursuant to the 1970 amendments to the Clean Air Act, Illinois developed a SIP which included Rule 205(b)(1), a loading terminal rule applicable to terminals loading more than 40,-000 gallons of gasoline per day. The SIP provided that permits to operate would be issued only to those sources in compliance with the Clean Air Act. The SIP was approved as submitted on May 31, 1972.

After the SIP was approved, the Illinois Petroleum Control Board, an association of integrated oil companies, requested that the type of equipment and the level of emissions required for compliance with Rule 205(b)(1) be precisely defined and recommended that the use of submerged loading pipes or equivalent devices be specifically authorized. The Illinois EPA concurred in this recommendation, noting that the use of submerged pipes would reduce emissions to the level contemplated by the approved SIP. Hearings were held on the proposed clarification in June and July of 1973. The U. S. EPA had notice of these hearings but did not appear. Use of submerged loading pipes was approved. Plaintiffs were issued permits to operate on this basis. In 1978 and 1979, after a U. S. EPA determination that Rule 205(b)(1) required external vapor control systems, the Administrator issued Notices of Violations to the four oil companies.

Plaintiffs charge that the Administrator has exceeded his authority under the Clean Air Act. They assert that they are in full compliance with the Act and Rule 205(b)(1) and aver that the Administrator has no authority to enforce regulations repealed by the Illinois Pollution Control Board or to interpret Illinois regulations contrary to the interpretation of state agencies. Plaintiffs contend that the Administrator, by determining that the use of submerged loading pipes does not constitute compliance with Rule 205(b)(1), is, in effect, revoking their Permits to Operate. They allege that the Administrator does not have this power. Finally, they contend that the Administrator has failed to follow the procedures outlined in the statute for amending imple-

mentation plans which are "substantially inadequate."[1]

The sole issue is whether alleged violators of the Clean Air Act may obtain pre–enforcement judicial review of the Administrator's Notices of Violation. Determination of this issue turns on whether the action of the Administrator is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and whether Notices of Violation are final agency action.

 It is well settled that there is a strong presumption in favor of judicial review of final agency action which is precluded only upon a showing of "clear and convincing evidence" of contrary legislative intent. *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). The Clean Air Act specifies its own review procedures.[2] It provides that actions charging the Administrator with failure to perform a non–discretionary act may be brought in district court, 42 U.S.C. § 7604. Review of the Administrator's action in approving or promulgating an implementation plan or a charge that the Administrator is abusing his discretion can be filed only in the Court of Appeals. *Getty Oil Co. (Eastern Operation) v. Ruckelshaus*, 467 F.2d 349 (3d Cir. 1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973).

Relying on *Union Electric Co. v. EPA*, 593 F.2d 299 (8th Cir. 1979) and *Lloyd A. Fry Roofing Co. v. U. S. EPA*, 554 F.2d 885 (8th Cir. 1977), defendants argue that the Clean Air Act precludes all pre–enforcement review. This contention is without merit. *Union Electric Co.* and *Fry* held that under certain circumstances, pre–enforcement review is unavailable. The *Fry* court held that a challenge to an abatement order on the grounds of technological or economic infeasibility may not be raised prior to an EPA enforcement action. In *Union Electric Co.*, the court held it lacked jurisdiction to enjoin an EPA enforcement action to permit the plaintiff to seek an extension from the state on a one year variance from the state implementation plan. Neither of these cases, however, held that the Clean Air Act precludes pre–enforcement review per se.

In contrast to *Union Electric Co.* and *Fry*, plaintiffs here are not seeking to delay enforcement of applicable regulations. Rather they are raising purely legal issues regarding the scope of the Administrator's authority in interpreting the state implementation plan and his duty to affirmatively remedy an inadequate plan. These issues are not "committed to agency discretion by law," and, thus, are reviewable.[3]

---

1. 42 U.S.C. § 7410(a)(2)(H) provides for revision:

 *whenever the Administrator finds on the basis of information available to him that the plan is substantially inadequate to achieve the national ambient air quality primary or secondary standard which implements or to otherwise comply with any additional requirements established under the Clean Air Act Amendments of 1977;*

2. Plaintiffs' other jurisdictional arguments have been considered and found to be without merit. First, plaintiffs' theory of jurisdiction under the Constitution is unclear. Apparently it is their position that the Administrator's ruling imposes a financial burden on them which deprives them of property without due process of law. Although there are cases cited to support other paragraphs of the complaint, no cases are cited to support this constitutional basis for jurisdiction. Plaintiffs' allegations do not rise to legally cognizable proportions under the Constitution in situations where, as here, the challenged statute provides for rule–making procedures and judicial review. The "mere invocation of

due process" cannot confer jurisdiction on the district court; a statutory basis is required. *West Penn Power v. Train*, 538 F.2d 1020 (3d Cir.), *cert. denied*, 429 U.S. 1091, 97 S.Ct. 1102, 51 L.Ed.2d 537 (1976).

 Second, neither the Administrative Procedure Act nor the Declaratory Judgment Act afford an independent basis for jurisdiction. *West Penn Power Co. v. Train*, 378 F.Supp. 941 (W.D.Pa.1974). "The Administrative Procedure Act ("APA") alone does not confer jurisdiction [and] does not sanction judicial review where a relevant statute precludes it." *Hagedorn v. Union Carbide Corp.*, 363 F.Supp. 1061, 1066 (N.D.W.Va.1973). Similarly, the Declaratory Judgment Act cannot provide a jurisdictional basis because this Act extends only to those cases which are otherwise within the competence of the district court. *Id.*

3. *See Philadelphia Electric Co. v. Costle*, Slip Op. No. 78–4170 (E.D.Pa. Dec. 29, 1979); *Ashland Oil, Inc. v. McDonald*, Slip Op. No. C79–338, (N.D.Ohio, June 11, 1980) adopting a similar analysis and granting pre–enforcement judicial review.

Moreover, several additional factors militate in favor of judicial review. The U. S. EPA was given notice and the opportunity to appear at the Illinois public hearings held to clarify Rule 205(b)(1). It failed to attend. Since the state has the primary responsibility of enforcing the Clean Air Act, 42 U.S.C. § 7401(a)(3), and the Administrator had given no indication that it disagreed with the state interpretation of Rule 205(b)(1), plaintiffs were justified in relying on the state interpretation. Further, because violators are subject to the severe penalties of up to $25,000 a day, 42 U.S.C. § 7413, there is great pressure to comply with the Notices of Violation regardless of their validity. In a situation where, as here, the Administrator has declined to publicly state his position regarding his interpretation of a SIP and then delays several years before issuing Notices of Violation, the possibility exists that the Administrator is exceeding his statutory authority. In view of the Administrator's ability to impose substantial civil and criminal penalties for alleged violations of the Clean Air Act, the scope of his authority is particularly appropriate for judicial review.

The next consideration is whether Notices of Violation are final agency action. The Clean Air Act empowers the Administrator to make a finding of violation on "any information available" and to set compliance schedules at any "reasonable time." 42 U.S.C. § 7413. It is clear, however, that final agency action need not be based on an administrative record reflecting notice and opportunity for a hearing. *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980). Once Notices of Violation are issued, Section 113 of the Clean Air Act, 42 U.S.C. § 7413, mandates that the Administrator *"shall commence"* a civil action if a violation continues for more than 30 days after the Notices have been issued. Thus, upon expiration of the 30 day period, no further agency action is required before the Administrator must enforce his decision by filing a civil action. For this reason, Notices of Violation are a final agency action subject to judicial review.

In view of the finality of the Notices of Violation, the presumption in favor of judicial review, the nature of the issues concerning the scope of the Administrator's authority and the immediate and substantive harm to the plaintiffs if review is denied, the Court concludes it has jurisdiction to review the validity of the Notices of Violation challenged in this action. Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction is denied.